**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| REVOLAZE LLC,<br><br>             Plaintiff,<br><br>v.<br><br>J. C. PENNEY COMPANY, INC.,<br>J. C. PENNEY CORPORATION, INC.,<br>and J. C. PENNEY PURCHASING<br>CORPORATION,<br><br>             Defendants. | Civil Action No. 2:19-cv-00043-JRG |

---

**PLAINTIFF REVOLAZE'S ANSWERS TO**
**DEFENDANTS' COUNTERCLAIMS IN DEFENDANTS' SECOND AMENDED**
**ANSWER, DEFENSES, AND COUNTERCLAIMS**

---

      Plaintiff RevoLaze LLC, ("RevoLaze") submits the following response to the

Counterclaims of Defendants J. C. Penny Corporation, Inc. and J. C. Penney Purchasing

Corporation (collectively "J. C. Penney").

<u>**ANSWERS TO COUNTERCLAIMS**</u>

**PARTIES**

1. Defendant/Counterclaimant J.C. Penney Corporation, Inc. ("JCP") is a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business at 6501 Legacy Drive, Plano, Texas 75024. J.C. Penney Corporation, Inc.'s registered agent in Texas is: CT Corp. System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75021.

Response:  Admitted.

2. Defendant/Counterclaimant J. C. Penney Purchasing Corporation ("JCPPC") is a corporation duly organized and existing under the laws of the state of New York, with its principal place of

business at 6501 Legacy Drive, Plano, Texas 75024. JCPPC's registered agent in Texas is: CT Corp. System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75021.

Response: Admitted.

3. On information and belief, and based on Plaintiff's allegations, Plaintiff/Counterclaim-Defendant RevoLaze LLC is a limited liability company organized and existing under the laws of the State of Delaware, having a place of business at a 31000 Viking Parkway, Westlake, Ohio 44145.

Response: Admitted.

## NATURE OF ACTION

4. These Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Defendants/Counterclaimants seek declarations that the '444 patent, the '602 patent, the '196 patent, the '505, and the '972 patent are not infringed and/or are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including 35 U.S.C. § 101 *et seq*.

Response:  Paragraph 5 states a legal conclusion to which no response is required.  To the extent

a response is required, Plaintiff admits that Defendants' Counterclaims to Plaintiff's Second

Amended Complaint purports to be an a Declaratory Judgment action for a declaration of non-

infringement and invalidity of the U.S. Patents asserted against J. C. Penney Corporation, Inc.

and J. C. Penney Purchasing Corporation by Plaintiff in its Second Amended Complaint: U.S.

Patent Nos. 5,990,444; 6,140,602; 6,252,196; 6,664,505; 6,819,972.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over these Counterclaims for declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a), 2201(a) and (b), and 2202 based on an actual controversy among the parties, arising under the patent laws of the United States, 35 U.S.C. §1 *et seq*. This Court has original jurisdiction over the subject matter of these claims under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 as well as 21 U.S.C. § 355(c)(3)(D).

Response:  RevoLaze admits that this Court has subject matter jurisdiction over these

Counterclaims for declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a),

2

2201(a) and (b), and 2202 based on an actual controversy among the parties, arising under the

patent laws of the United States, 35 U.S.C. § 1 *et seq* and that this Court has original jurisdiction

over the subject matter of these claims under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

RevoLaze denies that this Court has original jurisdiction over the subject matter of these claims

under 21 U.S.C. § 355(c)(3)(D), which does not apply to the present matter.

6. This Court has personal jurisdiction over the Plaintiff/Counterclaim-Defendant based on, *inter alia*, Plaintiff/Counterclaim-Defendant's filing of this lawsuit in this Jurisdiction.

Response:  Admitted.

7. Venue is proper in this Judicial District based on 28 U.S.C. § 1400(a) and/or 28 U.S.C. § 1391(b), (c), and (d).

Response: Admitted.

## BACKGROUND

8. The '444 patent, on its face, is titled "Laser Method and System of Scribing Graphics," and states its date of issue as November 23, 1999.

Response: Admitted.

9. On information and belief, and based on Plaintiff/Counterclaim-Defendant's allegations, Plaintiff/Counterclaim-Defendant currently owns the '444 patent.

Response: Admitted.

10. The '602 patent, on its face, is titled "Marking of Fabrics and Other Materials Using a Laser," and states its date of issue as October 31, 2000.

Response: Admitted.

11. On information and belief, and based on Plaintiff/Counterclaim-Defendant's allegations, Plaintiff/Counterclaim-Defendant currently owns the '602 patent.

Response: Admitted.

12. The '196 patent, on its face, is titled "Laser Method of Scribing Graphics," and states its date of issue as June 26, 2001.

Response: Admitted.

13. On information and belief, and based on Plaintiff/Counterclaim-Defendant's allegations, Plaintiff/Counterclaim-Defendant currently owns the '196 patent.

Response: Admitted.

14. The '505 patent, on its face, is titled "Laser Processing of Materials Using Mathematical Tools," and states its date of issue as December 16, 2003.

Response: Admitted.

15. On information and belief, and based on Plaintiff/Counterclaim-Defendant's allegations, Plaintiff/Counterclaim-Defendant currently owns the '505 patent.

Response: Admitted.

16. The '972 patent, on its face, is titled "Material Surface Processing With a Laser That Has a Scan Modulated Effective Power to Achieve Multiple Worn Looks," and states its date of issue as November 16, 2004.

Response: Admitted.

17. On information and belief, and based on Plaintiff/Counterclaim-Defendant's allegations, Plaintiff/Counterclaim-Defendant currently owns the '972 patent.

Response: Admitted.

18. On February 5, 2019, Plaintiff/Counterclaim-Defendant filed its Complaint alleging infringement by JCP and JCPenney Company of the '444, '602, '196, '505, and '972 patents.

Response: Admitted.

19. On February 14, 2019, Plaintiff/Counterclaim-Defendant filed its Second Amended Complaint alleging infringement by JCP and JCPenney Company of the '444, '602, '196, '505, and '972 patents.

Response: Denied.

20. On July 30, 2019, Plaintiff/Counterclaim-Defendant filed its Second Amended Complaint alleging infringement by Defendants of the '444, '602, '196, '505, and '972 patents.

Response: Admitted.

4

## COUNTERCLAIM I
### (Declaration of Invalidity of the '444 Patent)

21. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 21 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 21 of J. C. Penney's

Counterclaims as if set forth herein.

22. The claims of the '444 patent are invalid for failing to meet one or more requirements for patentability of Title 35 of the United States Code, including 35 U.S.C. § 101 *et seq*. and/or 37 C.F.R. § § 1.1, et seq.

Response: Denied.

23. The '444 Patent is invalid due to indefiniteness under 35 U.S.C. § 112, ¶ 2 (now 35 U.S.C. § 112(b)) for at least the reasons set forth in H & M Hennes & Mauritz L.P. and H & M Hennes & Mauritz AB's ("H&M") Motion for Summary Determination of Invalidity of the Asserted Patents on the Basis of Indefiniteness (attached as Exhibit A) and the associated Memorandum and Points of Authorities in Support thereof (attached as Exhibit B) (collectively, H&M's "Motion") filed on September 1, 2015 in In the Matter of Certain Laser Abraded Denim Garments, Investigation No. 337-TA-930 (U.S.I.T.C. Aug. 18, 2014) (the "ITC Investigation"); the briefing supporting H&M's Motion, including Respondents' Opening Claim Construction Brief and Respondents' Rebuttal Claim Construction Brief (attached as Exhibit C), both referenced in footnote 2 of H&M's Motion; the Commission Investigative Staff's briefing related to claim construction in the ITC Investigation and H&M's Motion, including, without limitation, the Commission Investigative Staff's Initial Claim Construction Brief filed in the ITC Investigation on January 14, 2015 (attached as Exhibit D) and its Rebuttal Claim Construction Brief filed in the ITC Investigation; and the Commission Investigative Staff's Response to H&M's Motion filed in the ITC Investigation on September 11, 2015 (attached as Exhibit E). See Fed. R. Civ. P. 10(c).

Response: Denied.

24. The '444 Patent is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least one or more of the prior art references, devices, or events set forth in Respondents' Joint Notice of Prior Art filed in the ITC Investigation on January 9, 2015 (attached as Exhibit F) and New Respondents' Joint Notice of Prior Art filed in the ITC Investigation on May 8, 2015 (attached as Exhibit G).

Response: Denied.

25. The '444 Patent is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least the following prior art references: CA 1146635 A; GB 2294656 A; US 4936608; US 5017423; US 5817271; US 5865933; US 5880430; US 6840721; WO 1989012552 A1; WO 1997016279 A1; US 5567207 (and corresponding records and logbooks from Icon Laser Solutions, LLC); and Zeus Laser System from Integrated Laser Systems, Inc. and corresponding Software.

Response: Denied.

26. Plaintiff/Counterclaim-Defendant's claims are barred because each claim of the '444 Patent, including each of the asserted claims, claims patent-ineligible subject matter under 35 U.S.C. § 101.

Response: Denied.

27. In particular, each claim of the '444 Patent, including each of the asserted claims, is directed to a patent-ineligible abstract idea and/or law of nature and the elements of each such claim, when considered individually and as an ordered combination fail to transform the nature of the claim into a patent-eligible application of the abstract idea and/or law of nature and thus, fail to include an inventive concept. For example, several asserted claims recite an equation, "mathematical operation," "identifying a material," "avoid[ing] undesired" things, the relationship between "energy density per unit time" and "power," "obtaining an indication," "determining a pattern," or "determining special operational parameters" that are ineligible under 35 U.S.C. § 101.

Response: Denied.

28. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the validity of the '444 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

29. Defendant/Counterclaimants are entitled to a judicial declaration that the '444 patent is invalid.

Response:  Denied.

## COUNTERCLAIM II
### (Declaration of Noninfringement of the '444 Patent)

30. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 30 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 30 of J. C. Penney's

Counterclaims as if set forth herein.

31. The manufacture, use, sale, offer for sale, and/or importation into the United States of the accused products does not and will not literally infringe, induce infringement of, or contribute to the infringement of any valid or enforceable claim of the '444 patent.

Response: Denied.

32. Defendant/Counterclaimants do not infringe, and have never infringed, any valid claim of the asserted patents, including the asserted claims set in paragraph 47 of the Second Amended Complaint ("Asserted Claims"), whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, through importation, or otherwise under any section of 35 U.S.C. § 271, including, under 35 U.S.C. § 271(g), and, as such, is without any liability to Plaintiff/Counterclaim-Defendant.

Response: Plaintiff lacks sufficient information to admit or deny the factual allegations of

Paragraph 32 with regard to Defendants' alleged noninfringement of any non-asserted claim

from the asserted patents and, therefore, denies the allegations.  Plaintiff denies the remainder of

the allegations in Paragraph 32.

33. The Second Amended Complaint fails to plausibly identify or explain how each limitation of each of the Asserted Claims is performed by, or where each limitation of each of the Asserted Claims is found in, the products identified in the Second Amended Complaint, including the products set forth in paragraph 50 of the Second Amended Complaint (collectively, the "Accused Products"). None of the Accused Products or, on information and belief, the process(es) by which they were produced, taken either alone or in combination, satisfies all limitations of any of the Asserted Claims, either literally or under the doctrine of equivalents.

Response: Denied.

34. By way of example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, one or more of the following limitations found in the Asserted Claims:

A. " $(\text{watts-sec}/\text{mm3}) = \left( \frac{\text{continuous power (watts)}}{\text{(area of spot (mm}^2))} \right) \left( \frac{1}{\text{speed (mm/sec)}} \right)$ "

B. "applying a laser at a specified amount of energy density per unit time and per unit area which avoids undesired carbonization, melting or burn-through, to an area of said material to change some perceivable characteristic of said area of said material"

C. "determining at least one characteristic of the material, said at least one characteristic being of a kind which affects a propensity of the material to be physically altered by a radiation source"

D. "determining special operational parameters for the material with its specific characteristics, said special operational parameters which allow a focused beam of radiation to form a pattern in the material which changes the material without undesirably damaging the material"

E. "obtaining an indication of the desired pattern"

F. "investigating the pattern to determine if the pattern includes elements which are more likely to cause undesired damage to the material when applied to the material by a laser"

G. "said laser beam not being output until after said laser is moving relative to said material, to avoid overetching of the material at startup"

H. "allowing a user to enter and/or change each of a plurality of different parameters"

I. "using a laser to process a material by controlling scan lines of the laser to have a controlled energy density per unit time which depends on said effective applied power levels"

J. "defining a desired pattern of color alterations to be formed to a garment by selecting a plurality of areas on a display, defining a color that is associated with each of a plurality of abrasion levels, selecting a color to associate with each of the plurality of areas to thereby associate a level of abrasion with each of the plurality of areas"

K. "obtaining a first garment which has a desired look to be replicated"

L. "determining color levels of different areas of a plurality of different areas of said first garment"

M. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but

8

is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

N. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

O. "authoring a special image intended for use in changing the color of textile fabric, which has differently colored areas representing different levels of change of color to said textile fabric"

Response: Denied.


35. By way of further example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, the limitations found in the Asserted Claims because no lasers are involved in the manufacturing process used to make at least some of the Accused Products.

Response: Denied.


36. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the alleged infringement by the accused products of the '444 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

37. Defendant/Counterclaimants are entitled to a judicial declaration that the '444 patent is not infringed.

Response:  Denied.

**COUNTERCLAIM III**
**(Declaration of Invalidity of the '602 Patent)**

38. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 38 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 38 of J. C. Penney's

Counterclaims as if set forth herein.

39. Upon information and belief, the claims of the'602 patent are invalid for failing to meet one or more requirements for patentability under Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112; and/or 37 C.F.R. §§ 1.1, *et seq.*

Response: Denied.

40. By way of example, each claim of the '602 patent, including each of the asserted claims, is invalid due to indefiniteness under 35 U.S.C. § 112, ¶ 2 (now 35 U.S.C. § 112(b)) for at least the reasons set forth in H & M Hennes & Mauritz L.P. and H & M Hennes & Mauritz AB's ("H&M") Motion for Summary Determination of Invalidity of the Asserted Patents on the Basis of Indefiniteness (attached as Exhibit A) and the associated Memorandum and Points of Authorities in Support thereof (attached as Exhibit B) (collectively, H&M's "Motion") filed on September 1, 2015 in *In the Matter of Certain Laser Abraded Denim Garments*, Investigation No. 337-TA-930 (U.S.I.T.C. Aug. 18, 2014) (the "ITC Investigation"); the briefing supporting H&M's Motion, including Respondents' Opening Claim Construction Brief and Respondents' Rebuttal Claim Construction Brief (attached as Exhibit C), both referenced in footnote 2 of H&M's Motion; the Commission Investigative Staff's briefing related to claim construction in the ITC Investigation and H&M's Motion, including, without limitation, the Commission Investigative Staff's Initial Claim Construction Brief filed in the ITC Investigation on January 14, 2015 (attached as Exhibit D) and its Rebuttal Claim Construction Brief filed in the ITC Investigation; and the Commission Investigative Staff's Response to H&M's Motion filed in the ITC Investigation on September 11, 2015 (attached as Exhibit E). *See* Fed. R. Civ. P. 10(c).

Response: Denied.

41. By way of further example, each claim of the '602 patent, including each of the asserted claims, is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least one or more of the prior art references, devices, or events set forth in Respondents' Joint Notice of Prior Art filed in the ITC Investigation on January 9, 2015 (attached as Exhibit F) and New Respondents' Joint Notice of Prior Art filed in the ITC Investigation on May 8, 2015 (attached as Exhibit G).

Response: Denied.

42. Additionally, each claim of the'602 patent, including each of the asserted claims, is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least the following prior art references: CA 1146635 A; GB 2294656 A; US 4936608; US 5017423; US 5817271; US 5865933; US 5880430; US 6840721; WO 1989012552 A1; WO 1997016279 A1; US 5567207 (and corresponding records and logbooks from Icon Laser Solutions, LLC); and Zeus Laser System from Integrated Laser Systems, Inc. and corresponding Software.

Response: Denied.

43. Plaintiff/Counterclaim-Defendant's claims are barred because each claim of the '602 patent, including each of the asserted claims, claims patent-ineligible subject matter under 35 U.S.C. § 101. In particular, each claim of the '602 patent, including each of the asserted claims, is directed to a patent-ineligible abstract idea and/or law of nature and the elements of each such claim, when considered individually and as an ordered combination fail to transform the nature of the claim into a patent-eligible application of the abstract idea and/or law of nature and thus, fail to include an inventive concept. For example, several asserted claims recite an equation, "mathematical operation," "identifying a material," "avoid[ing] undesired" things, the relationship between "energy density per unit time" and "power," "obtaining an indication," "determining a pattern," or "determining special operational parameters" that are ineligible under 35 U.S.C. § 101.

Response: Denied.

44. Defendant/Counterclaimants reserve the right to assert any other basis for invalidity or ineligibility that becomes known to it through the course of discovery or otherwise.

Response: Plaintiff admits that Defendants state they have reserved the right to assert any other

basis for invalidity or ineligibility that becomes known to them through the course of discovery

or otherwise. Plaintiff denies the allegations of Paragraph 44.

45. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the validity of the '602 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

46. Defendant/Counterclaimants are entitled to a judicial declaration that the '602 patent is invalid.

Response:  Denied.

## COUNTERCLAIM IV
### (Declaration of Noninfringement of the '602 Patent)

47. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 47 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 47 of J. C. Penney's

Counterclaims as if set forth herein.

48. The manufacture, use, sale, offer for sale, and/or importation into the United States of the accused products does not and will not literally infringe, induce infringement of, or contribute to the infringement of any valid or enforceable claim of the '602 patent.

Response: Denied.

49. Defendant/Counterclaimants do not infringe, and have never infringed, any valid claim of the asserted patents, including the asserted claims set in paragraph 47 of the Second Amended Complaint ("Asserted Claims"), whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, through importation, or otherwise under any section of 35 U.S.C. § 271, including, under 35 U.S.C. § 271(g), and, as such, is without any liability to Plaintiff/Counterclaim-Defendant.

Response: Plaintiff lacks sufficient information to admit or deny the factual allegations of

Paragraph 49 with regard to Defendants' alleged noninfringement of any non-asserted claim

from the asserted patents and, therefore, denies the allegations.  Plaintiff denies the remainder of

the allegations in Paragraph 49.

50. The Second Amended Complaint fails to plausibly identify or explain how each limitation of each of the Asserted Claims is performed by, or where each limitation of each of the Asserted Claims is found in, the products identified in the Second Amended Complaint, including the products set forth in paragraph 50 of the Second Amended Complaint (collectively, the "Accused Products"). None of the Accused Products or, on information and belief, the process(es) by

which they were produced, taken either alone or in combination, satisfies all limitations of any of the Asserted Claims, either literally or under the doctrine of equivalents.

Response: Denied.


51. By way of example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, one or more of the following limitations found in the Asserted Claims:

A. " $(\text{watts-sec}/\text{mm3}) = \left( \dfrac{\text{continuous power (watts)}}{(\text{area of spot (mm}^2))} \right) \left( \dfrac{1}{\text{speed (mm/sec)}} \right)$ "

B. "applying a laser at a specified amount of energy density per unit time and per unit area which avoids undesired carbonization, melting or burn-through, to an area of said material to change some perceivable characteristic of said area of said material"

C. "determining at least one characteristic of the material, said at least one characteristic being of a kind which affects a propensity of the material to be physically altered by a radiation source"

D. "determining special operational parameters for the material with its specific characteristics, said special operational parameters which allow a focused beam of radiation to form a pattern in the material which changes the material without undesirably damaging the material"

E. "obtaining an indication of the desired pattern"

F. "investigating the pattern to determine if the pattern includes elements which are more likely to cause undesired damage to the material when applied to the material by a laser"

G. "said laser beam not being output until after said laser is moving relative to said material, to avoid overetching of the material at startup"

H. "allowing a user to enter and/or change each of a plurality of different parameters"

I. "using a laser to process a material by controlling scan lines of the laser to have a controlled energy density per unit time which depends on said effective applied power levels"

J. "defining a desired pattern of color alterations to be formed to a garment by selecting a plurality of areas on a display, defining a color that is associated with each of a plurality of abrasion levels, selecting a color to associate with each of the plurality of areas to thereby associate a level of abrasion with each of the plurality of areas"

K. "obtaining a first garment which has a desired look to be replicated"

13

L. "determining color levels of different areas of a plurality of different areas of said first garment"

M. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

N. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

O. "authoring a special image intended for use in changing the color of textile fabric, which has differently colored areas representing different levels of change of color to said textile fabric"

Response: Denied.


52. By way of further example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, the limitations found in the Asserted Claims because no lasers are involved in the manufacturing process used to make at least some of the Accused Products.

Response: Denied.


53. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the alleged infringement by the accused products of the '602 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

54. Defendant/Counterclaimants are entitled to a judicial declaration that the '602 patent is not infringed.

Response:  Denied.

## COUNTERCLAIM V
### (Declaration of Invalidity of the '196 Patent)

55. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 55 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 55 of J. C. Penney's

Counterclaims as if set forth herein.

56. Upon information and belief, the claims of the '196 patent are invalid for failing to meet one or more requirements for patentability under Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112; and/or 37 C.F.R. §§ 1.1, *et seq.*

Response: Denied.

57. By way of example, each claim of the '196 patent, including each of the asserted claims, is invalid due to indefiniteness under 35 U.S.C. § 112, ¶ 2 (now 35 U.S.C. § 112(b)) for at least the reasons set forth in H & M Hennes & Mauritz L.P. and H & M Hennes & Mauritz AB's ("H&M") Motion for Summary Determination of Invalidity of the Asserted Patents on the Basis of Indefiniteness (attached as Exhibit A) and the associated Memorandum and Points of Authorities in Support thereof (attached as Exhibit B) (collectively, H&M's "Motion") filed on September 1, 2015 in *In the Matter of Certain Laser Abraded Denim Garments*, Investigation No. 337-TA-930 (U.S.I.T.C. Aug. 18, 2014) (the "ITC Investigation"); the briefing supporting H&M's Motion, including Respondents' Opening Claim Construction Brief and Respondents' Rebuttal Claim Construction Brief (attached as Exhibit C), both referenced in footnote 2 of H&M's Motion; the Commission Investigative Staff's briefing related to claim construction in the ITC Investigation and H&M's Motion, including, without limitation, the Commission Investigative Staff's Initial Claim Construction Brief filed in the ITC Investigation on January 14, 2015 (attached as Exhibit D) and its Rebuttal Claim Construction Brief filed in the ITC Investigation; and the Commission Investigative Staff's Response to H&M's Motion filed in the ITC Investigation on September 11, 2015 (attached as Exhibit E). *See* Fed. R. Civ. P. 10(c).

Response: Denied.

58. By way of further example, each claim of the '196 patent, including each of the asserted claims, is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least one or more of the prior art references, devices, or events set forth in Respondents' Joint Notice of Prior Art filed in the ITC Investigation on January 9, 2015 (attached as Exhibit F) and New Respondents' Joint Notice of Prior Art filed in the ITC Investigation on May 8, 2015 (attached as Exhibit G).

Response: Denied.

59. Additionally, each claim of the '196 patent, including each of the asserted claims, is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least the following prior art references: CA 1146635 A; GB 2294656 A; US 4936608; US 5017423; US 5817271; US 5865933; US 5880430; US 6840721; WO 1989012552 A1; WO 1997016279 A1; US 5567207 (and corresponding records and logbooks from Icon Laser Solutions, LLC); and Zeus Laser System from Integrated Laser Systems, Inc. and corresponding Software.

Response: Denied.

60. Plaintiff/Counterclaim-Defendant's claims are barred because each claim of the '196 patent, including each of the asserted claims, claims patent-ineligible subject matter under 35 U.S.C. § 101. In particular, each claim of the '196 patent, including each of the asserted claims, is directed to a patent-ineligible abstract idea and/or law of nature and the elements of each such claim, when considered individually and as an ordered combination fail to transform the nature of the claim into a patent-eligible application of the abstract idea and/or law of nature and thus, fail to include an inventive concept. For example, several asserted claims recite an equation, "mathematical operation," "identifying a material," "avoid[ing] undesired" things, the relationship between "energy density per unit time" and "power," "obtaining an indication," "determining a pattern," or "determining special operational parameters" that are ineligible under 35 U.S.C. § 101.

Response: Denied.

61. Defendant/Counterclaimants reserve the right to assert any other basis for invalidity or ineligibility that becomes known to it through the course of discovery or otherwise.

Response: Plaintiff admits that Defendants state they have reserved the right to assert any other basis for invalidity or ineligibility that becomes known to them through the course of discovery or otherwise. Plaintiff denies the allegations of Paragraph 61.

62. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the validity of the '196 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

63. Defendant/Counterclaimants are entitled to a judicial declaration that the '196 patent is invalid.

Response: Denied.

## COUNTERCLAIM VI
### (Declaration of Noninfringment of the '196 Patent)

64. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 64 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 64 of J. C. Penney's

Counterclaims as if set forth herein.

65. The manufacture, use, sale, offer for sale, and/or importation into the United States of the accused products does not and will not literally infringe, induce infringement of, or contribute to the infringement of any valid or enforceable claim of the '196 patent.

Response: Denied.

66. Defendant/Counterclaimants do not infringe, and have never infringed, any valid claim of the asserted patents, including the asserted claims set in paragraph 47 of the Second Amended Complaint ("Asserted Claims"), whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, through importation, or otherwise under any section of 35 U.S.C. § 271, including, under 35 U.S.C. § 271(g), and, as such, is without any liability to Plaintiff/Counterclaim-Defendant.

Response: Plaintiff lacks sufficient information to admit or deny the factual allegations of

Paragraph 66 with regard to Defendants' alleged noninfringement of any non-asserted claim

from the asserted patents and, therefore, denies the allegations.  Plaintiff denies the remainder of

the allegations in Paragraph 66.

67. The First Second Amended Complaint fails to plausibly identify or explain how each limitation of each of the Asserted Claims is performed by, or where each limitation of each of the Asserted Claims is found in, the products identified in the Second Amended Complaint, including the products set forth in paragraph 50 of the Second Amended Complaint (collectively, the "Accused Products"). None of the Accused Products or, on information and belief, the process(es) by which they were produced, taken either alone or in combination, satisfies all limitations of any of the Asserted Claims, either literally or under the doctrine of equivalents.

17

Response: Denied.

68. By way of example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, one or more of the following limitations found in the Asserted Claims:

A. " $(watts \cdot sec/mm3) = \left( \dfrac{continuous\ power\ (watts)}{(area\ of\ spot\ (mm^2))} \right) \left( \dfrac{1}{speed\ (mm/sec)} \right)$ ,"

B. "applying a laser at a specified amount of energy density per unit time and per unit area which avoids undesired carbonization, melting or burn-through, to an area of said material to change some perceivable characteristic of said area of said material"

C. "determining at least one characteristic of the material, said at least one characteristic being of a kind which affects a propensity of the material to be physically altered by a radiation source"

D. "determining special operational parameters for the material with its specific characteristics, said special operational parameters which allow a focused beam of radiation to form a pattern in the material which changes the material without undesirably damaging the material"

E. "obtaining an indication of the desired pattern"

F. "investigating the pattern to determine if the pattern includes elements which are more likely to cause undesired damage to the material when applied to the material by a laser"

G. "said laser beam not being output until after said laser is moving relative to said material, to avoid overetching of the material at startup"

H. "allowing a user to enter and/or change each of a plurality of different parameters"

I. "using a laser to process a material by controlling scan lines of the laser to have a controlled energy density per unit time which depends on said effective applied power levels"

J. "defining a desired pattern of color alterations to be formed to a garment by selecting a plurality of areas on a display, defining a color that is associated with each of a plurality of abrasion levels, selecting a color to associate with each of the plurality of areas to thereby associate a level of abrasion with each of the plurality of areas"

K. "obtaining a first garment which has a desired look to be replicated"

L. "determining color levels of different areas of a plurality of different areas of said first garment"

M. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

N. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

O. "authoring a special image intended for use in changing the color of textile fabric, which has differently colored areas representing different levels of change of color to said textile fabric"

Response: Denied.

69. By way of further example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, the limitations found in the Asserted Claims because no lasers are involved in the manufacturing process used to make at least some of the Accused Products.

Response: Denied.

70. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the alleged infringement by the accused products of the '196 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

71. Defendant/Counterclaimants are entitled to a judicial declaration that the '196 patent is not infringed.

Response:  Denied.

## COUNTERCLAIM VII
### (Declaration of Invalidity of the '505 Patent)

72. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 72 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 72 of J. C. Penney's

Counterclaims as if set forth herein.


73. Upon information and belief, the claims of the '505 patent are invalid for failing to meet one or more requirements for patentability under Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112; and/or 37 C.F.R. §§ 1.1, *et seq.*

Response: Denied.


74. By way of example, each claim of the '505 patent, including each of the asserted claims, is invalid due to indefiniteness under 35 U.S.C. § 112, ¶ 2 (now 35 U.S.C. § 112(b)) for at least the reasons set forth in H & M Hennes & Mauritz L.P. and H & M Hennes & Mauritz AB's ("H&M") Motion for Summary Determination of Invalidity of the Asserted Patents on the Basis of Indefiniteness (attached as Exhibit A) and the associated Memorandum and Points of Authorities in Support thereof (attached as Exhibit B) (collectively, H&M's "Motion") filed on September 1, 2015 in *In the Matter of Certain Laser Abraded Denim Garments*, Investigation No. 337-TA-930 (U.S.I.T.C. Aug. 18, 2014) (the "ITC Investigation"); the briefing supporting H&M's Motion, including Respondents' Opening Claim Construction Brief and Respondents' Rebuttal Claim Construction Brief (attached as Exhibit C), both referenced in footnote 2 of H&M's Motion; the Commission Investigative Staff's briefing related to claim construction in the ITC Investigation and H&M's Motion, including, without limitation, the Commission Investigative Staff's Initial Claim Construction Brief filed in the ITC Investigation on January 14, 2015 (attached as Exhibit D) and its Rebuttal Claim Construction Brief filed in the ITC Investigation; and the Commission Investigative Staff's Response to H&M's Motion filed in the ITC Investigation on September 11, 2015 (attached as Exhibit E). *See* Fed. R. Civ. P. 10(c).

Response: Denied.


75. By way of further example, each claim of the '505 patent, including each of the asserted claims, is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least one or more of the prior art references, devices, or events set forth in Respondents' Joint Notice of Prior Art filed in the ITC Investigation on January 9, 2015 (attached as Exhibit F) and New Respondents' Joint Notice of Prior Art filed in the ITC Investigation on May 8, 2015 (attached as Exhibit G).

Response: Denied.

76. Additionally, each claim of the '505 patent, including each of the asserted claims, is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least the following prior art references: CA 1146635 A; GB 2294656 A; US 4936608; US 5017423; US 5817271; US 5865933; US 5880430; US 6840721; WO 1989012552 A1; WO 1997016279 A1; US 5567207 (and corresponding records and logbooks from Icon Laser Solutions, LLC); and Zeus Laser System from Integrated Laser Systems, Inc. and corresponding Software.

Response: Denied.

77. Plaintiff/Counterclaim-Defendant's claims are barred because each claim of the '505 patent, including each of the asserted claims, claims patent-ineligible subject matter under 35 U.S.C. § 101. In particular, each claim of the '505 patent, including each of the asserted claims, is directed to a patent-ineligible abstract idea and/or law of nature and the elements of each such claim, when considered individually and as an ordered combination fail to transform the nature of the claim into a patent-eligible application of the abstract idea and/or law of nature and thus, fail to include an inventive concept. For example, several asserted claims recite an equation, "mathematical operation," "identifying a material," "avoid[ing] undesired" things, the relationship between "energy density per unit time" and "power," "obtaining an indication," "determining a pattern," or "determining special operational parameters" that are ineligible under 35 U.S.C. § 101.

Response: Denied.

78. Defendant/Counterclaimants reserve the right to assert any other basis for invalidity or ineligibility that becomes known to it through the course of discovery or otherwise.

Response: Plaintiff admits that Defendants state they have reserved the right to assert any other

basis for invalidity or ineligibility that becomes known to them through the course of discovery

or otherwise. Plaintiff denies the allegations of Paragraph 78.

79. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the validity of the '505 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

80. Defendant/Counterclaimants are entitled to a judicial declaration that the '505 patent is invalid.

Response:  Denied.

## COUNTERCLAIM VIII
### (Declaration of Noninfringement of the '505 Patent)

81. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 81 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 81 of J. C. Penney's

Counterclaims as if set forth herein.

82. The manufacture, use, sale, offer for sale, and/or importation into the United States of the accused products does not and will not literally infringe, induce infringement of, or contribute to the infringement of any valid or enforceable claim of the '505 patent.

Response: Denied.

83. Defendant/Counterclaimants do not infringe, and have never infringed, any valid claim of the asserted patents, including the asserted claims set in paragraph 47 of the Second Amended Complaint ("Asserted Claims"), whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, through importation, or otherwise under any section of 35 U.S.C. § 271, including, under 35 U.S.C. § 271(g), and, as such, is without any liability to Plaintiff/Counterclaim-Defendant.

Response: Plaintiff lacks sufficient information to admit or deny the factual allegations of

Paragraph 83 with regard to Defendants' alleged noninfringement of any non-asserted claim

from the asserted patents and, therefore, denies the allegations.  Plaintiff denies the remainder of

the allegations in Paragraph 83.

84. The Second Amended Complaint fails to plausibly identify or explain how each limitation of each of the Asserted Claims is performed by, or where each limitation of each of the Asserted Claims is found in, the products identified in the Second Amended Complaint, including the products set forth in paragraph 50 of the Second Amended Complaint (collectively, the "Accused Products"). None of the Accused Products or, on information and belief, the process(es) by

22

which they were produced, taken either alone or in combination, satisfies all limitations of any of the Asserted Claims, either literally or under the doctrine of equivalents.

Response: Denied.

85. By way of example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, one or more of the following limitations found in the Asserted Claims:

A. " $(\text{watts} \cdot \text{sec} / \text{mm3}) = \left( \frac{\text{continuous power (watts)}}{(\text{area of spot (mm}^2))} \right)\left( \frac{1}{\text{speed (mm} / \text{sec})} \right)$ "

B. "applying a laser at a specified amount of energy density per unit time and per unit area which avoids undesired carbonization, melting or burn-through, to an area of said material to change some perceivable characteristic of said area of said material"

C. "determining at least one characteristic of the material, said at least one characteristic being of a kind which affects a propensity of the material to be physically altered by a radiation source"

D. "determining special operational parameters for the material with its specific characteristics, said special operational parameters which allow a focused beam of radiation to form a pattern in the material which changes the material without undesirably damaging the material"

E. "obtaining an indication of the desired pattern"

F. "investigating the pattern to determine if the pattern includes elements which are more likely to cause undesired damage to the material when applied to the material by a laser"

G. "said laser beam not being output until after said laser is moving relative to said material, to avoid overetching of the material at startup"

H. "allowing a user to enter and/or change each of a plurality of different parameters"

I. "using a laser to process a material by controlling scan lines of the laser to have a controlled energy density per unit time which depends on said effective applied power levels"

J. "defining a desired pattern of color alterations to be formed to a garment by selecting a plurality of areas on a display, defining a color that is associated with each of a plurality of abrasion levels, selecting a color to associate with each of the plurality of areas to thereby associate a level of abrasion with each of the plurality of areas"

K. "obtaining a first garment which has a desired look to be replicated"

23

L. "determining color levels of different areas of a plurality of different areas of said first garment"

M. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

N. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

O. "authoring a special image intended for use in changing the color of textile fabric, which has differently colored areas representing different levels of change of color to said textile fabric"

Response: Denied.

86. By way of further example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, the limitations found in the Asserted Claims because no lasers are involved in the manufacturing process used to make at least some of the Accused Products.

Response: Denied.

87. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the alleged infringement by the accused products of the '505 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

88. Defendant/Counterclaimants are entitled to a judicial declaration that the '505 patent is not infringed.

Response:  Denied.

**COUNTERCLAIM IX**
**(Declaration of Invalidity of the '972 Patent)**

89. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 89 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 89 of J. C. Penney's

Counterclaims as if set forth herein.

90. Upon information and belief, the claims of the '972 patent are invalid for failing to meet one or more requirements for patentability under Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112; and/or 37 C.F.R. §§ 1.1, *et seq.*

Response: Denied.

91. By way of example, each claim of the '972 patent, including each of the asserted claims, is invalid due to indefiniteness under 35 U.S.C. § 112, ¶ 2 (now 35 U.S.C. § 112(b)) for at least the reasons set forth in H & M Hennes & Mauritz L.P. and H & M Hennes & Mauritz AB's ("H&M") Motion for Summary Determination of Invalidity of the Asserted Patents on the Basis of Indefiniteness (attached as Exhibit A) and the associated Memorandum and Points of Authorities in Support thereof (attached as Exhibit B) (collectively, H&M's "Motion") filed on September 1, 2015 in *In the Matter of Certain Laser Abraded Denim Garments*, Investigation No. 337-TA-930 (U.S.I.T.C. Aug. 18, 2014) (the "ITC Investigation"); the briefing supporting H&M's Motion, including Respondents' Opening Claim Construction Brief and Respondents' Rebuttal Claim Construction Brief (attached as Exhibit C), both referenced in footnote 2 of H&M's Motion; the Commission Investigative Staff's briefing related to claim construction in the ITC Investigation and H&M's Motion, including, without limitation, the Commission Investigative Staff's Initial Claim Construction Brief filed in the ITC Investigation on January 14, 2015 (attached as Exhibit D) and its Rebuttal Claim Construction Brief filed in the ITC Investigation; and the Commission Investigative Staff's Response to H&M's Motion filed in the ITC Investigation on September 11, 2015 (attached as Exhibit E). *See* Fed. R. Civ. P. 10(c).

Response: Denied.

92. By way of further example, each claim of the '972 patent, including each of the asserted claims, is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least one or more of the prior art references, devices, or events set forth in Respondents' Joint Notice of Prior Art filed in the ITC Investigation on January 9, 2015 (attached as Exhibit F) and New Respondents' Joint Notice of Prior Art filed in the ITC Investigation on May 8, 2015 (attached as Exhibit G).

Response: Denied.

93. Additionally, each claim of the '972 patent, including each of the asserted claims, is invalid due to anticipation under 35 U.S.C. § 102 and/or obviousness under 35 U.S.C. § 103 in view of at least the following prior art references: CA 1146635 A; GB 2294656 A; US 4936608; US 5017423; US 5817271; US 5865933; US 5880430; US 6840721; WO 1989012552 A1; WO 1997016279 A1; US 5567207 (and corresponding records and logbooks from Icon Laser Solutions, LLC); and Zeus Laser System from Integrated Laser Systems, Inc. and corresponding Software.

Response: Denied.

94. Plaintiff/Counterclaim-Defendant's claims are barred because each claim of the '972 patent, including each of the asserted claims, claims patent-ineligible subject matter under 35 U.S.C. § 101. In particular, each claim of the '505 patent, including each of the asserted claims, is directed to a patent-ineligible abstract idea and/or law of nature and the elements of each such claim, when considered individually and as an ordered combination fail to transform the nature of the claim into a patent-eligible application of the abstract idea and/or law of nature and thus, fail to include an inventive concept. For example, several asserted claims recite an equation, "mathematical operation," "identifying a material," "avoid[ing] undesired" things, the relationship between "energy density per unit time" and "power," "obtaining an indication," "determining a pattern," or "determining special operational parameters" that are ineligible under 35 U.S.C. § 101.

Response: Denied.

95. Defendant/Counterclaimants reserve the right to assert any other basis for invalidity or ineligibility that becomes known to it through the course of discovery or otherwise.

Response: Plaintiff admits that Defendants state they have reserved the right to assert any other basis for invalidity or ineligibility that becomes known to them through the course of discovery or otherwise. Plaintiff denies the allegations of Paragraph 95.

96. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the validity of the '972 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

97. Defendant/Counterclaimants are entitled to a judicial declaration that the '972 patent is invalid.

Response: Denied.

## COUNTERCLAIM X
### (Declaration of Noninfringement of the '972 Patent)

98. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 98 as if fully set forth herein.

Response: RevoLaze restates its responses to paragraphs 1 through 98 of J. C. Penney's

Counterclaims as if set forth herein.


99. The manufacture, use, sale, offer for sale, and/or importation into the United States of the accused products does not and will not literally infringe, induce infringement of, or contribute to the infringement of any valid or enforceable claim of the '972 patent.

Response: Denied.


100. Defendant/Counterclaimants do not infringe, and have never infringed, any valid claim of the asserted patents, including the asserted claims set in paragraph 47 of the Second Amended Complaint ("Asserted Claims"), whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, through importation, or otherwise under any section of 35 U.S.C. § 271, including, under 35 U.S.C. § 271(g), and, as such, is without any liability to Plaintiff/Counterclaim-Defendant.

Response: Plaintiff lacks sufficient information to admit or deny the factual allegations of

Paragraph 100 with regard to Defendants' alleged noninfringement of any non-asserted claim

from the asserted patents and, therefore, denies the allegations.  Plaintiff denies the remainder of

the allegations in Paragraph 100.


101. The Second Amended Complaint fails to plausibly identify or explain how each limitation of each of the Asserted Claims is performed by, or where each limitation of each of the Asserted Claims is found in, the products identified in the Second Amended Complaint, including the products set forth in paragraph 50 of the Second Amended Complaint (collectively, the "Accused Products"). None of the Accused Products or, on information and belief, the process(es) by

which they were produced, taken either alone or in combination, satisfies all limitations of any of the Asserted Claims, either literally or under the doctrine of equivalents.

Response: Denied.

102. By way of example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, one or more of the following limitations found in the Asserted Claims:

A. " $(watts \cdot sec / mm3) = \left( \frac{continuous\ power\ (watts)}{(area\ of\ spot\ (mm^2))} \right) \left( \frac{1}{speed\ (mm / sec)} \right)$ "

B. "applying a laser at a specified amount of energy density per unit time and per unit area which avoids undesired carbonization, melting or burn-through, to an area of said material to change some perceivable characteristic of said area of said material"

C. "determining at least one characteristic of the material, said at least one characteristic being of a kind which affects a propensity of the material to be physically altered by a radiation source"

D. "determining special operational parameters for the material with its specific characteristics, said special operational parameters which allow a focused beam of radiation to form a pattern in the material which changes the material without undesirably damaging the material"

E. "obtaining an indication of the desired pattern"

F. "investigating the pattern to determine if the pattern includes elements which are more likely to cause undesired damage to the material when applied to the material by a laser"

G. "said laser beam not being output until after said laser is moving relative to said material, to avoid overetching of the material at startup"

H. "allowing a user to enter and/or change each of a plurality of different parameters"

I. "using a laser to process a material by controlling scan lines of the laser to have a controlled energy density per unit time which depends on said effective applied power levels"

J. "defining a desired pattern of color alterations to be formed to a garment by selecting a plurality of areas on a display, defining a color that is associated with each of a plurality of abrasion levels, selecting a color to associate with each of the plurality of areas to thereby associate a level of abrasion with each of the plurality of areas"

K. "obtaining a first garment which has a desired look to be replicated"

L. "determining color levels of different areas of a plurality of different areas of said first garment"

M. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

N. "controlling a laser to form said pattern by first controlling said laser according to said file to produce an effective output power in said first areas which is greater than zero, but is less than a threshold beyond which a visible change will be made to said textile material, and to increase the effective output power at a boundary between said first areas, and other areas outside said first areas"

O. "authoring a special image intended for use in changing the color of textile fabric, which has differently colored areas representing different levels of change of color to said textile fabric"

Response: Denied.

103. By way of further example, and upon information and belief, the Accused Products do not meet, or the manufacturer(s) does not perform, the limitations found in the Asserted Claims because no lasers are involved in the manufacturing process used to make at least some of the Accused Products.

Response: Denied.

104. A definite and concrete, real and substantial, justiciable controversy exists between Defendant/Counterclaimants and Plaintiff/Counterclaim-Defendant concerning the alleged infringement by the accused products of the '972 patent, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Response: Denied.

105. Defendant/Counterclaimants are entitled to a judicial declaration that the '972 patent is not infringed.

Response:  Denied.

## COUNTERCLAIM XI
### (Declaration of Unenforceability Due to Inequitable Conduct)

106. Defendant/Counterclaimants incorporate by reference Paragraphs 1 through 105 as if fully set forth herein.

Response: RevoLaze restates its responses to Paragraphs 1 through 105 of J. C. Penney's

Counterclaims as if set forth herein.


107. Upon information and belief, the claims of the '444, '196, and '602 patents are unenforceable due to the inequitable conduct of Darryl Costin (the alleged inventor), Scott Harris (prosecuting attorney), and others at assignee TechnoLines, Inc., ("TechnoLines") in misrepresenting inventorship to the United States Patent and Trademark Office.

Response: Denied.


108. The '444, '196, and '602 patents name Darryl Costin as the inventor of the claimed technology in this case. However, the claimed inventions of each of the '444, '196, and '602 patents trace back in various ways to the same technology disclosed in U.S. Patent Application No. 08/550,339 ("the '339 Application"). The '339 Application listed Dr. Larissa Sheveleva, an immigrant from the Soviet Union, as its *sole* inventor. In the '339 Application, Dr. Sheveleva set forth detailed descriptions of using controllable lasers to create patterns in fabric in a manner claimed and described in each of the '444, '196, and '602 patents.

Response:  Plaintiff admits that Darryl Costin is the named inventor of the '444 and '602 patents.

Plaintiff admits that Larissa Sheveleva is listed as the sole inventor of U.S. Patent Application

No. 08/550,339.  Plaintiff denies the remainder of the allegations in Paragraph 108.


109. The '444 patent is described as a continuation-in-part of the '339 Application, the '196 Patent is a divisional application of the '444 patent, and the '602 patent has a specification that is a *word for word copy* of the '339 Application.

Response:  Plaintiff lacks sufficient information to admit or deny that the '444 Patent is

described as a continuation-in-part of the '339 Application, and therefore, denies the allegation.

Plaintiff admits that the '196 Patent is a divisional application of the '444 Patent. Plaintiff denies

the remainder of the allegations in this Paragraph 109.

30

110. Throughout the prosecution of the '339 Application, Dr. Sheveleva claimed to have solely invented the technology described and claimed in the '339 Application prior to July 31, 1994. Gary M. Sutter was originally listed as the prosecuting attorney. On or about April 15, 1997, Scott Harris replaced Mr. Sutter as the prosecuting attorney for the '339 Application. *See* Revocation and New Power of Attorney (Apr. 15, 1997).

Response:  Plaintiff admits that on or about April 15, 1997, Scott Harris replaced Mr. Sutter as

the prosecuting attorney for the '339 Application. Plaintiff lacks sufficient information to admit

or deny the remainder of the allegations in Paragraph 110, and therefore, denies those

allegations.


111. On or about April 15, 1997, Mr. Harris (on behalf of assignee TechnoLines) filed a request with the USPTO to deny Dr. Sheveleva access to the '339 Application. The USPTO grated the requested on June 9, 1997. *See* Request for Restriction of Access by Assignee Under MPEP 106 (Apr. 15, 1997). Nonetheless, after excluding Dr. Sheveleva from the prosecution of the '339 Application, Mr. Harris continued to submit to the USPTO the declarations and other documents concerning the timing and inventorship of the technology described and claimed in the '339 Application. These documents asserted that Dr. Sheveleva alone invented the subject matter of the application prior to July 31, 1994. The '339 Application never issued as a patent. The claims were deemed unpatentable due to anticipation by the prior art and failure to list all inventors.

Response: Plaintiff admits that on or about April 15, 1997, Mr. Harris, on behalf of assignee

TechnoLines, Inc., filed a "Request for Restriction of Access by Assignee Under MPEP 106".

Plaintiff admits that the '339 Application never issued as a patent. Plaintiff lacks sufficient

information to admit or deny the remainder of the allegations in Paragraph 111, and therefore,

denies those allegations.


112. On October 11, 1996, Mr. Sutter filed U.S. Patent Application No. 08/729,493 ("the '493 Application"), which issued as the '444 Patent. When filed, the '493 Application listed four inventors, including Darryl Costin and Dr. Sheveleva. Dr. Costin has been the CEO of TechnoLines since its inception in 1993. As noted above, the '493 Application was filed as a continuation-in-part of the '339 Application.

Response: Plaintiff admits that on October 11, 1996, Mr. Sutter filed U.S. Patent Application No.

08/729,493 ("the '493 Application"), which listed four inventors, including Darryl Costin and

Larissa Sheveleva, and was filed as a continuation-in-part of the '339 Application. Plaintiff

admits that the '493 Application issued as the '444 Patent.  Plaintiff denies the remainder of the

allegations in Paragraph 112.


113. On or about March 22, 1999, Mr. Harris submitted a Correction of Inventorship Under Rule
48(b) ("Correction") deleting all named inventors except Dr. Costin from the '493 Application.
The Correction stated: "All claims directed to coloring agents and other inventive contribution
[sic] of the inventors Alexandra Liebertz, Larissa Sheveleva, Troy Moore, and Heather Costin
have been cancelled herein. This leaves only the inventive contribution of Darryl Costin. These
inventors' contributions are no longer being claimed in this application." Correction of
Inventorship (Mar. 22, 1999).

Response: Admitted.


114. The statements in the Correction amount to a material misrepresentation concerning Dr.
Sheveleva's inventive contributions to the claims of the '493 Application. In particular, the '493
Application is a continuation-in-part of the '339 Application, which lists Dr. Sheveleva as the
sole inventor. In order to properly claim priority as a continuation-in-part of the '339
Application, the '493 Application was required to have overlapping inventorship with the '339
Application. Thus, the alleged inventions claimed in the '493 Application must be based in
whole or in part on inventive contribution by Dr. Sheveleva or such claim to priority is invalid
and evidences the material misrepresentation of inventorship. Similarly, the '196 patent that is a
divisional of the '444 patent fails to list Dr. Sheveleva as the named inventor.

Response: Plaintiff admits that the '493 Application was filed as a continuation-in-part of the

'339 Application and that the '339 Application lists Dr. Sheveleva as the sole inventor.  Plaintiff

admits that a continuation-in-part application may claim the benefit of one or more prior-filed

copending nonprovisional applications where the first application and the alleged continuation-

in-part application were filed with at least one common inventor.  Plaintiff denies the remainder

of the allegations in Paragraph 114.


115. Dr. Sheveleva's contributions to the claims of the '444 and '196 patents include at least the
following concepts disclosed in the '339 Application: (1) changing power of the laser;( 2)

changing the speed of the laser; (3) changing spot size of the laser; (4) using a laser to make a design on denim; (5) making calculations; and (6) avoiding burn-through.

Response: Denied.

116. Mr. Harris and Dr. Costin materially misrepresented Dr. Sheveleva's contributions to the claims of the '444 and '196 patents with specific intent to deceive the USPTO. Specific intent may be inferred, for example, by the fact that Mr. Harris and Dr. Costin knew of Dr. Sheveleva's contributions through the '339 Application. Further, such specific intent is evidenced from the Applications' deletion of the inventor who provided the basis for the priority claim of the '444 application to the '339 application, without removal of that priority claim. In addition, Mr. Harris, on behalf of TechnoLines (Dr. Costin was the CEO of this company) barred Dr. Sheveleva from accessing the '339 Application. The conduct of Mr. Harris and Dr. Costin demonstrates a concerted effort to misrepresent Dr. Sheveleva's contributions to the claimed inventions and deceive the PTO into believing that Dr. Costin was the sole inventor.

Response: Denied.

117. The same is true with respect to the '602 patent. U.S. Patent Application No. 08/844,114 ("the '114 Application"), which issued as the '602 Patent, was filed on April 29, 1997. Dr. Costin was listed as the sole inventor and Mr. Harris was listed as the prosecuting attorney.

Response: Plaintiff admits that the '114 Application, which issued as the '602 Patent, was filed

on April 29, 1997.  Plaintiff lacks sufficient information to admit or deny the remainder of the

allegations in Paragraph 117, and therefore, denies those allegations.

118. Despite claiming sole inventorship, the specification of the '602 patent, including the "Abstract," "Background of the Invention," "Summary of the Invention," and "Detailed Description of the Preferred Embodiment" sections are a *word-for-word* copy of the corresponding sections of the specification of the '339 Application. Further, the Figures of the '602 patent are identical to the drawings submitted with the '339 Application, apart from shading, handwriting, and other non-substantive design elements. In short, the specification of the '602 patent is substantively identical to the specification of the '339 Application.

Response: Plaintiff admits that some elements of the figures of the '602 Patent specification and

the '339 Application are the same.  Plaintiff denies the remainder of the allegations in Paragraph

118.

119. As noted above, during the prosecution of the '339 Application, Mr. Harris represented to the PTO on multiple occasions that Dr. Sheveleva was the sole inventor of the subject matter described in the '339 Application. Nonetheless, by filing the '114 Application and listing Dr. Costin as the sole inventor, Mr. Harris and Dr. Costin falsely represented that Dr. Costin was the sole inventor of that same subject matter.

Response: Denied.


120. Indeed, when the '114 Application was originally filed, Dr. Costin and Mr. Harris claimed priority to the '339 Application, a claim of priority that was rejected by the PTO because the applications had different inventors. (*See* '114 Application, First Office Action dated September 30, 1998.) In response, Dr. Costin and Mr. Harris conceded that the '114 should not be a continuation of the '339 application, but claimed the invention date of the '114 application's claims was "at least as early as the filing date of the '339 application." (*See* '114 Application, Response to First Office Action dated January 6, 1999.) Such a claim is clearly contradictory to the admission of joint inventorship originally asserted in the '493 application as a continuation in part of the '339 application.

Response: Plaintiff admits that the '114 Application as originally filed erroneously claimed

priority to the '339 Application, that the USPTO denied the priority claim as the '114

Application had a different inventive entity, and that the Applicant acknowledged the error.

Plaintiff denies the remainder of the allegations in Paragraph 120.


121. The misrepresentation concerning Dr. Costin's inventorship was material to the patentability of the claims of the '114 Application. The USPTO would not have allowed the claims of the '114 Application to issue had the USPTO known that the alleged sole named inventor had not in fact invented them or falsely asserted either joint invention or that Dr. Sheveleva was a proper inventor.

Response: Denied.

122. The misrepresentation concerning Dr. Costin's inventorship was made with specific intent to deceive the PTO. Intent can be inferred, for example, by the fact that Mr.  Harris and Dr. Costin knew of the '339 Application, and failed to make any correction to either the '339 or '114 applications when the PTO cited the different claimed inventors for these substantively identical applications. Furthermore, the timing of the '114 Application  (April 1997) indicates that the '114 Application was filed as part of Dr. Costin's and Mr. Harris's scheme to deceive the PTO into believing that it was Dr. Costin, rather than Dr. Sheveleva, who invented the subject matter.

Response: Denied.

123. In addition to the '339 Application itself serving as prior art to the '114 Application, the declarations and other evidence submitted during the prosecution of the '339 Application constitute material evidence that Dr. Sheveleva was the sole inventor of the subject matter, that she had invented it prior to July 31, 1994, and that the '339 Application represented "the culmination of many years of work [by Dr. Sheveleva] on commercializing this subject matter."'339 Application, Declaration of Larissa Sheveleva Under Rule 131 (May 30, 1997). In another declaration supporting the '339 Application made by Dr. Sheveleva's daughter, Valentina Khutorsky, core features claimed by Dr. Costin as his own in the '114 Application are described as having been invented by Dr. Sheveleva: "I know from personal experience that my mother made designs by keeping the laser moving within a speed that allowed changing the color of the fabric without burning or making holes in the fabric. Hence she controlled the speed of the laser within a range between a maximum speed, and a minimum speed where the laser would have burned the material." '339 Application, Declaration of Valentina Khutorsky (Aug. 4, 1999). Mr. Harris and Dr. Costin failed to inform the PTO of this evidence or make any correction to the differing inventorship claims of the substantively identical '339 and '114 applications.

Response: Plaintiff admits that a declaration supporting the '339 Application made by Dr.

Sheveleva's daughter stated "I know from personal experience that my mother made designs by

keeping the laser moving within a speed that allowed changing the color of the fabric without

burning or making holes in the fabric. Hence she controlled the speed of the laser within a range

between a maximum speed, and a minimum speed where the laser would have burned the

material."  Plaintiff denies the remainder of the allegations in Paragraph 123.

124. The omission concerning the evidence of Dr. Sheveleva's inventorship was made with a specific intent to deceive the PTO. When Mr. Harris and Dr. Costin filed the '114 Application in April 1997, they included a Declaration from Dr. Costin stating "I believe I am the original, first and sole inventor" of the invention sought in the '114 Application. Meanwhile, in the '339 Application, on or about May 30, 1997, Mr. Harris submitted a declaration to the PTO from Dr. Sheveleva stating "I am the inventor of the subject matter that is described and claimed in patent application no. 08/550,339." '339 Application, Declaration of Larissa Sheveleva Under Rule 131 (May 30, 1997).

Response: Plaintiff admits that a declaration from Dr. Costin stating "I believe I am the original,

first and sole inventor" of the invention sought in the '114 Application was submitted to the

USPTO with the '114 Application filing.  Plaintiff admits that in the '339 Application, on or about

May 30, 1997, Mr. Harris submitted a declaration to the USPTO from Dr. Sheveleva stating "I am

the inventor of the subject matter that is described and claimed in patent application no.

08/550,339."  Plaintiff denies the remainder of the allegations in Paragraph 124.


125. As discussed above, the subject matter in both applications is the same. Indeed, as late as
May 11, 2005, Mr. Harris submitted a brief to the USPTO's Board of Patent Appeals and
Interferences insisting that Dr. Sheveleva was the sole inventor of the subject matter described
and claimed in the '339 Application. *See* '339 Application, Applicants Brief on Appeal dated May
11, 2005. Nonetheless, in April 1997, Mr. Harris represented to the PTO that Dr. Costin was the
sole inventor of the very same subject matter. These assertions clearly indicate an intent to
deceive the PTO by making two conflicting representations concerning the issue of inventorship.

Response: Plaintiff lacks sufficient information to admit or deny that the subject matter in both

applications is the same, and therefore, denies this allegation.  Plaintiff admits that on May 11,

2005, Mr. Harris submitted a brief to the USPTO's Board of Patent Appeals and Interferences

asserting that Dr. Sheveleva was the sole inventor of the subject matter described and claimed in

the '339 Application.  Plaintiff denies the remainder of the allegations in Paragraph 125.


126. Thus, due to the inequitable conduct of Mr. Harris and Dr. Costin, the '444, '196, and '602
patents are unenforceable. Accordingly, Defendant/Counterclaimants are entitled to a judicial
declaration that the '444, '196, and '602 patents are unenforceable due to the inequitable
conduct.

Response: Denied.

## PRAYER FOR RELIEF

RevoLaze denies that J. C. Penny Corporation, Inc. and J. C. Penney Purchasing Corporation are entitled to any of the relief requested.  RevoLaze prays for judgment and requests that this court:

(a) Dismiss J. C. Penny Corporation, Inc. and J. C. Penney Purchasing Corporation's counterclaims with prejudice;

(b) Enter judgment in favor of RevoLaze;

(c) Award RevoLaze its reasonable costs, expenses, and attorneys' fees; and

(d) Grant such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

RevoLaze demands a trial by jury on all issues so triable.

Dated: December 17, 2019

Respectfully submitted,

*/s/ Alexander Debski*_____

C. Graham Gerst
IL Bar # 6200898
ggerst@giplg.com
Alexander Debski
IL Bar # 6305715 (also admitted in ED Texas)
adebski@giplg.com
Meagan Leslie
IL Bar # 6327229
mleslie@giplg.com
Global IP Law Group, LLC
55 West Monroe Street
Suite 3400
Chicago, IL 60603
T: (312) 241-1500
F: (312) 241-1522

Melissa R. Smith

(Texas Bar No. 24001351)
GILLAM SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

Attorneys for Plaintiff RevoLaze LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served via CM/ECF to all counsel of record on December 17, 2019.


/s/ *Alexander Debski*_____