**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| REVOLAZE LLC, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO.  2:19-CV-00043-JRG |
| § | |
| J.C. PENNEY CORPORATION, INC.,  J. C. § | |
| PENNEY PURCHASING CORPORATION, § | |
| § | |
| *Defendants.* § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants J.C. Penney Corporation, Inc. and J.C. Penney Purchasing Corporation's (collectively, "JCP") Motion to Compel Plaintiff to Produce Samples for Inspection and Testing (the "Motion"). (Dkt. No. 139.) In the Motion, JCP seeks to compel Plaintiff RevoLaze LLC ("RevoLaze") to produce certain JC Penney private-label jeans in its possession for inspection and testing. (*Id.* at 7.) Having considered the Motion and subsequent briefing, the Court is of the opinion that the Motion should be and hereby is **GRANTED** for the reasons set forth herein.

## I.    BACKGROUND

Beginning in 2014 RevoLaze began purchasing JCPenney private-label jeans that it believed to be infringing on the asserted patent in this case. (*Id.* at 1.) RevoLaze continued to acquire JCPenney private-label jeans from 2014 into 2020, purchasing at least 95 pairs of jeans in total. (*Id.*) During this time period, RevoLaze performed testing on at least 62 jeans (some of which were tested multiple times) using a Scanning Electron Microscope ("SEM"). (*Id.*) "RevoLaze alleges that SEM images that show presence of 'pores' in jean fibers are indicative of laser

abrasion." (*Id.*) RevoLaze first notified JCP of its infringement in 2016. (Dkt. No. 151 at 1.) When it filed suit against JCP in February 2019, RevoLaze included SEM images in its Complaint. (*Id.*)

The SEM test requires removal of a small sample from the garment for SEM imaging. (Dkt. No. 139 at 5.) As part of the process, the sample is sputtered with a metallic substance. (Dkt. No. 151 at 3.) Since JCP has not preserved samples of its own private-label jeans, it requests to inspect the jeans collected by RevoLaze so that it may conduct its own SEM testing. (*Id.* at 1.) RevoLaze, however, has refused to ship the jeans to JCP for SEM testing unless JCP agrees to certain conditions. (*Id.* at 2.) These conditions include allowing RevoLaze's technical expert to observe all phases of the testing and that all steps in the SEM testing process be recorded.[1] (Dkt. No. 139 at 2.) Unwilling to accept these conditions, JCP filed the instant Motion. (*Id.*)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 34 governs the pretrial production and inspection of tangible materials in discovery. *Ramos v. Carter Exp. Inc.*, 292 F.R.D. 406, 408 (S.D. Tex. 2013). Generally, "[i]f the Parties differ as to whether an inspection or test is appropriate, the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Hunley v. Glencore Ltd., Inc.*, No. 3:10-cv-455, 2013 WL 1681836, at *3 (E.D. Tenn., April 17, 2013) (internal quotations omitted).

In addition, for destructive testing, courts have repeatedly applied a four-factor test in determining whether to permit destructive testing. *Ramos*, 292 F.R.D. at 408 (collecting cases). The four factors are: (1) whether the proposed testing is reasonable, necessary, and relevant to

---

[1] JCP has agreed to the other conditions requested by RevoLaze. Thus, the Court need only address whether RevoLaze's expert should be permitted to observe the testing and whether such testing must be recorded. (*See* Dkt. No. 139 at 2.)

proving the movant's case; (2) whether the non-movant's ability to present evidence at trial will be hindered or prejudiced; (3) whether there are any less prejudicial alternatives to obtaining the evidence sought; and (4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial. *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 614 (D. Md. 2006). The decision on whether to allow testing, destructive or not, "rests within the sound discretion of the court." *Ostrander by Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988).

**III. ANALYSIS**

In the Motion, JCP argues that the SEM testing it proposes to do is non-destructive, and as such, RevoLaze is not entitled to the safeguards it requests. (Dkt. No. 139 at 3.) More specifically, "when courts compel the production of non-destructive testing, they habitually refuse to allow the presence of an opposing party." (*Id.* at 4 (quoting *Ramos*, 292 F.R.D. 406, 408 (S.D. Tex. 2013)).) JCP contends that the SEM testing is non-destructive because destructive testing involves tests that can only occur once before the evidence is destroyed. (*Id.*) Here, the jeans have been tested by RevoLaze multiple times already and still may be tested again. (*Id.*)

Second, JCP argues that JCP needs to conduct independent SEM testing to challenge RevoLaze's testing. (*Id.* at 5.) JCP argues that in order to determine where an SEM image came from, it needs both the SEM image and the actual jeans that were tested. (*Id.* at 6.) Thus, without the jeans, JCP cannot confirm that the SEM images supporting RevoLaze's claim actually come from JC Penney private-label jeans. (*Id.*)

Third, JCP argues that RevoLaze would suffer no prejudice from JCP conducting unsupervised testing. (*Id.*) JCP has agreed to quickly return the samples and the jeans would still be available for evidence at trial. (*Id.*) Finally, JCP argues that RevoLaze's presence at the testing

3

would deny JCP the protection of work-product privilege, despite the fact that RevoLaze has availed itself of the same privilege in regard to its testing. (*Id.* at 7.)

RevoLaze responds that the SEM testing is destructive because it is "testing that destroys or irreversibly alters evidence." (Dkt. No. 151 at 3 (quoting *Hunley*, 2013 WL 1681836, at *3).) The squares that JCP would remove from the jeans would irreversibly alter the garments. (*Id.*) RevoLaze contends that because the SEM testing is destructive, it should be afforded the same safeguards that many other courts have required when there is destructive testing. (*Id.* at 4.) Generally, "[w]here courts have ordered materials to be subject to destructive testing, they almost unanimously allow the opposing party to bear witness to the inspection and testing . . ." (*Id.* (quoting *Ramos*, 292 F.R.D. at 409).)

RevoLaze argues that it will be prejudiced if such testing is permitted without their supervision because RevoLaze intends to present these jeans at trial and JCP's removal of additional swatches and presentation of SEM images from different locations will result in jury confusion. (*Id.* at 5.) RevoLaze contends that it will be better equipped to explain the additional swatches and SEM images if it is able to observe JCP's testing. (*Id.*)

*Hunley* citing to *Mirchandani* defines destructive testing as testing that destroys or irreversibly alters evidence. *Hunley*, 2013 WL 1681836, at *3 (citing *Mirchandani*, 235 F.R.D. at 612.) Thus, the Court finds that the testing proposed by JCP is destructive because it will irreversibly alter the garments, and as such, the Court now considers the four-factor test to determine whether such testing should be permitted and what restrictions are necessary.

First, the parties do not appear to dispute that the testing sought by JCP is relevant. The SEM images form the basis of RevoLaze's claims of infringement and in order for JCP to challenge

4

the images, it must conduct testing of its own. Accordingly, the proposed testing is reasonable, necessary, and relevant to JCP's case.

Second, the Court does not find that permitting such testing will be prejudicial to RevoLaze. RevoLaze argues that JCP's testing will result in jury confusion when RevoLaze presents the jeans at trial, but does not explain how a cutout (when the jeans already have multiple cutouts from RevoLaze's testing) will confuse the jury. RevoLaze relies on several cases in arguing that such testing will be prejudicial and that RevoLaze should be permitted to observe any such testing. However, after reviewing such cases, the Court is not convinced that the conditions RevoLaze requests are appropriate.

In *Mirchandani*, the movant requested to test the bolt of a ladder, which was the subject of the litigation, and such testing would destroy the bolt preventing the plaintiffs from using the ladder in a live presentation in front of the jury. 235 F.R.D. at 616. Thus, the Court allowed the plaintiffs to observe the testing. *Id.* at 617. The Court finds this case distinguishable from the present case because the testing proposed by JCP would not prevent RevoLaze from presenting the garments at trial.

*Ostrander* involved whether certain garments satisfied non-flammability standards and whether the laundering of that fabric reduced the fabric's flame retardancy. *Ostrander by Ostrander*, 119 F.R.D. at 418 The defendant sought to obtain swatches of the garment for testing. *Id.* The Court recognized that such testing was destructive, but also noted that the testing would result in no unwashed pieces being available as evidence. *Id.* Again, the Court finds this case distinguishable from the present facts because after JCP's proposed testing, RevoLaze will still have plenty of relevant fabric from which to conduct additional tests if it wishes to do so.

5

In summary, many of the destructive testing cases concern testing in which there will be no physical product left for the non-movant's desired use. *See Oddello Indus., LLC v. Sherwin-Williams Co.*, No. 2:14-cv-127, 2015 WL 13413519, at *3 (E.D. Tenn. May 22, 2015) ("[U]nlike . . . items described in a great many destructive testing cases, untested samples [in this case] will remain intact. There will still be samples left to show the jury, or for other uses the plaintiff may wish to put them to.") Accordingly, the Court does not find that the restrictions imposed in those cases relied upon by RevoLaze are the appropriate restrictions to impose in this factually distinct case.

In light of the foregoing, considering factors three and four, there is no need to find a less prejudicial alternative because allowing JCP to conduct the testing without the supervision of RevoLaze will best aid the search for truth and will place JCP in the same posture as already held by RevoLaze. Furthermore, the other conditions already agreed to by JCP and RevoLaze provide adequate safeguards to minimize any potential prejudice to RevoLaze.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Motion to Compel Plaintiff to Produce Samples for Inspection and Testing (Dkt. No. 139). It is therefore **ORDERED** that RevoLaze produce samples adequate for SEM testing for all JCP jean samples in RevoLaze's possession, custody, or control. Testing by JCP may be conducted without the presence of RevoLaze's expert or representatives. JCP is not obligated to record the steps of the SEM testing process. It is further **ORDERED** that JCP comply with the other conditions outlined in Exhibit B attached to the Motion.

**So ORDERED and SIGNED this 27th day of April, 2020.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE