IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |  |
|---|---|---|
| REVOLAZE LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00043-JRG |
| | § | |
| J.C. PENNEY CORPORATION, INC.,  J. C. | § | |
| PENNEY PURCHASING CORPORATION, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff RevoLaze LLC's ("RevoLaze") Motion for Leave to Amend Infringement Contentions (the "Motion"). (Dkt. No. 126.) In the Motion, RevoLaze seeks leave to amend its infringement contentions to (1) incorporate information produced by Flynn Enterprises (the "Flynn Amendment"); (2) allege that the presumption of infringement applies to all products with a "reasonable likelihood of infringement under 35 U.S.C. § 295"; and (3) add evidence specific to two products named in the complaint. (*Id.* at 1.) For the reasons described herein, the Court finds that the Motion should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.  **BACKGROUND**

The patents asserted in this case (the "Patents-in-Suit") concern "laser technologies to scribe patterns and designs on textiles and garments." (Dkt. No. 1 ¶ 15.) RevoLaze alleges that Defendants J.C. Penney Corporation, Inc. and J.C. Penney Purchasing Corporation (collectively, "JCP") infringe the Patents-in-Suit "under 35 U.S.C. § 271(g) by importing into the United States or offering for sale, and/or using [] garments . . . that were manufactured by processes/methods claimed in the Patents-in-Suit." (Dkt. No. 41 ¶ 49.) RevoLaze's operative complaint includes three

accused products. (*Id.* at ¶ 50.) JCP represents that RevoLaze's Patent Rule 3-1 infringement contentions filed May 6, 2019, are similarly limited to the same three accused products. (Dkt. No. 133 at 3.)

On October 28, 2019, this Court ordered JCP to respond to interrogatories served by RevoLaze which sought information concerning (1) JCP's private-label jeans that had a worn, distressed, abraded, faded, or patterned appearance and (2) the manufacturers of such jeans. (Dkt. No. 72; *see also* Dkt. No. 53 at 2–3.) JCP then identified twenty-eight manufacturers and their 4,693 abraded-denim products. (Dkt. No. 126 at 3; Dkt. No. 133 at 6.) JCP also produced under court order approximately 8,736 documents related to these products and their manufacturers. (Dkt. No. 133 at 6.)

With this information, RevoLaze sought information directly from the identified manufacturers. (Dkt. No. 126 at 4.) RevoLaze issued subpoenas to ten manufacturers located within the United States. (*Id.*) Of those ten manufacturers, two never responded, two refused to produce responsive documents, two provided some documents suggesting that lasering was part of their general manufacturing processes, one provided a response that indicated its manufacturing process was "TBD," two "provided nothing of substance," and only one—Flynn Enterprises ("Flynn")—provided information about manufacturing specific products. (*Id.* at 4–5.) RevoLaze learned that Flynn uses Jeanologia lasers and subsequently subpoenaed Jeanologia. (*Id.* at 6.) However, such efforts were not successful as Jeanologia produced no documents and refused to provide a witness for a deposition. (*Id.* at 7.)

RevoLaze also sent letters to the foreign manufacturers. (*Id.* at 6.) Five out of fourteen manufacturers responded by return letter, but "provided very little information." (*Id.*) These letters stated that these five manufacturers do not use lasers or do not do so on JCP products. (*Id.*)

However, no manufacturing documentation was provided to support those manufacturers' denials. (*Id.* at 7.)

RevoLaze's deadline to serve infringement contentions was May 6, 2019. (Dkt. No. 30 at 5.) Nearly a year later, RevoLaze files the instant Motion seeking to amend its infringement contentions. (Dkt. No. 126.)[1]

## II. LEGAL STANDARD

Amendments and additions to a party's infringement contentions are governed by Local Patent Rule 3-6(b). This rule requires a showing of good cause for untimely amendment or supplementation of invalidity contentions. *See* P.R. 3-6(b) ("Amendment or supplementation of any Infringement Contentions or Invalidity Contentions, other than as expressly permitted in P.R. 3-6(a), may be made only by order of the Court, which shall be entered only upon a showing of good cause."). Courts in this District routinely apply a four-factor test to determine whether good cause has been shown. *See Alt v. Medtronic, Inc.*, No. 2:04-CV-370, 2006 WL 278868, at *2 (E.D. Tex. Feb. 1, 2006) (citing *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 849 (E.D. Tex. 2004); *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). Those four factors are: (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Id.* The burden of proving good cause rests with the party seeking the amendment. *Id.*

## III. DISCUSSION

RevoLaze contends that there is good cause for allowing the proposed amendments largely because the facts underlying these amendments could not have been discovered without the

---

[1] JCP represents that it does not oppose this specific request by RevoLaze. (Dkt. No. 133 at 3 n.5.) Accordingly, the Flynn Amendment is effectively unopposed.

3

extensive investigation RevoLaze has conducted into the production of JCP's private-label denim products. (Dkt. No. 126 at 1.) Much of RevoLaze's argument focuses on the addition of the presumption of infringement pursuant to 35 U.S.C. § 295 to its contentions. (*See* Dkt. No. 126.)

Section 295 is "a burden shifting mechanism. . . . When two conditions are met, the statute shifts that burden [of proving infringement] and requires the alleged infringer to disprove infringement." *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359 (Fed. Cir. 2000). In order to establish the applicability of § 295 the patentee must show that (1) a substantial likelihood exists that the product was made by the patented process and (2) the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to do so. *Id.* at 1359–60. "The patentee has every right to urge the court to apply § 295 when circumstances warrant it; likewise, the court has every right to exercise its discretion in determining at what point in the decisional process the statute will be brought into play." *Id.* at 60.

The Court now turns to consider the four-factor test noted above.

### A. Explanation for Failure to Meet Deadlines (the "Explanation Factor")

RevoLaze contends that at the time its infringement contentions were due, there was no information about the identity of JCP's manufacturers or how JCP's denim products were actually produced. (*Id.* at 10.) RevoLaze did not learn the manufacturers' identities until November 25, 2019, when JCP was compelled by the Court to provide that information. (*Id.*) RevoLaze contends it has thereafter diligently pursued information concerning how JCP's products are manufactured, but has met significant resistance from JCP's many suppliers. (*Id.* at 11.) As a result, RevoLaze argues that the addition of a § 295 contention is appropriate at this time as RevoLaze has now made a "reasonable effort" to otherwise learn about how JCP's products are made but has been unsuccessful. (*Id.* at 12.) As for RevoLaze's request to add evidence concerning two of the

4

products identified in its complaint, RevoLaze explains that it "waited until it was prepared to make a single request to amend." (*Id.*)

JCP responds that RevoLaze failed to act diligently. (Dkt. No. 133 at 12.) JCP argues that RevoLaze has been testing JCP jeans since early in this litigation and has only recently disclosed the extent of that testing as it attempts to amend its infringement contentions. (*Id.* at 13.) JCP says that RevoLaze has known who JCP's manufacturers were since September 2019, but RevoLaze did not begin contacting the manufacturers until after the Court granted its Motion to Compel in November 2019; and RevoLaze provides no explanation for the delay. (*Id.*) JCP also argues that RevoLaze could have made the § 295 assertion much earlier in the case so as to provide notice to JCP and RevoLaze was not required to exhaust its discovery efforts before making such an allegation. (*Id.* at 14.) Finally, and as to RevoLaze's third request to add additional evidence specific to two of its existing contentions, JCP urges that "RevoLaze could've included this evidence in its original contentions and provides no explanation for why it didn't." (*Id.* at 14 n. 59.)

As to the addition of the § 295 allegation, the Court is not persuaded that RevoLaze must have exhausted all its discovery efforts prior to including § 295 in its infringement contentions.[2] The purpose of P.R. 3-1 infringement contentions is to provide reasonable notice to an accused infringer of the accused products. *Tivo Inc. v. Samsung Elecs. Co., Ltd.*, 2:15-CV-1503-JRG, 2016

---

[2] The Court recognizes that RevoLaze is not asking the Court to determine if § 295 substantively applies at this juncture. RevoLaze is asking to amend so it can do so at a later date. That notwithstanding, the Court does not believe that inserting § 295 would be appropriate in this case at this late date. It is clear that RevoLaze made material efforts to discover the manufacturing processes employed both domestically and overseas. However, RevoLaze never moved to compel the cooperation of these third-party manufacturers, which indicates to the Court that RevoLaze is unable to establish that it exerted "reasonable efforts." Furthermore, the Court is reluctant to invoke the unavoidable punitive effect of § 295 against JCP in light of JCP's recent Motion to Compel Compliance with Subpoenas; Memorandum of Point and Authorities in Support Thereof, which evidences some effort by JCP to obtain information from these manufacturers. *See RevoLaze v. J.C. Penney Corporation, Inc., et al.*, No. 2:20-mc-00006-JRG (E.D. Tex. Apr. 9, 2020) (Dkt. No. 1) (seeking court assistance in compelling a JCP manufacturer to appear for a deposition).

WL 5172008, at *3 (E.D. Tex. July 22, 2016). This notice allows the accused infringer to conduct its own discovery and prepare its defense. *See Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex 2005). However, if the patentee waits until the very end of the discovery period to amend its contentions, the accused infringer is deprived of a fair opportunity to conduct discovery addressing this contention. This is especially impactful where the amendment would open the door to shifting the underying burden of proof.

The Court finds that RevoLaze's arguments concerning the prejudice factor belie its arguments regarding the Explanation Factor. RevoLaze argues that any prejudice to JCP is of its own making because JCP was warned of § 295's applicability by RevoLaze at a motion hearing on October 25, 2019 and JCP knew of RevoLaze's "frustrated" efforts in discovery. (Dkt. No. 143 at 2.) The Court finds that this argument actually cuts against RevoLaze. If RevoLaze was aware of the possibility that it would need to rely on § 295 as early as October 2019 and continued to be thwarted in its discovery efforts, it should have moved to amend infringement contentions at a much earlier time instead of waiting until the eve of the close of discovery. By waiting as it did, RevoLaze effectively prevented JCP from defending against § 295 and its considerable burden shifting impact. The Court finds RevoLaze's explanation for delay in seeking this particular amendment is lacking, especially given the proximity to the close of discovery.[3]

As to RevoLaze's request to add additional evidence concerning earlier identified accused products, the Court again finds that RevoLaze's explanation falls short. As to this issue RevoLaze merely states that it "waited until it was prepared to make a single request to amend."[4] (Dkt. No.

---

[3] It is also not lost on the Court that the instant Motion was filed two days after the Court denied JCP's Motion to Amend Invalidity Contentions. (Dkt. No. 122.)

[4] RevoLaze indicates in the Motion that JCP was amendable to this amendment, so it waited to include this amendment with the other amendments, but JCP refutes that representation. Instead, JCP represents that it just pointed out the missing evidence to RevoLaze, but that JCP did not request the inclusion of such evidence in RevoLaze's contentions. (Dkt. No. 133 at 14 n. 59.)

126 at 12.) This is not an adequate explanation for the resulting delay. Accordingly, for these reasons, the Court finds that the Explanation Factor weighs against granting leave to serve the amended infringement contentions.

### B. Importance

RevoLaze argues that denying the proposed amendments would prevent infringement assertions against the Flynn products and multiple products within the purview of § 295—this alone makes the second factor weigh in favor of amendment.[5] (Dkt. No. 126 at 12 (citing *Polaris PowerLED Tech., LLC v. Samsung Elecs. Am., Inc.*, No. 2:17-cv-00715 (E.D. Tex. Apr. 24, 2019) (Dkt. No. 285 at 8).) Further, RevoLaze contends that denial would reward JCP and its suppliers for their dilatory discovery conduct. (*Id.*)

JCP responds that RevoLaze's proposed amendment is futile because § 295 is not applicable to these circumstances. (Dkt. No. 133 at 14.) Specifically, JCP contends that RevoLaze's own testing reveals that RevoLaze cannot prove to a substantial likelihood that the additional products were made using the patented process. (*Id.* at 15.) Further, JCP contends most of its suppliers have stated they do not use lasers. (*Id.*) JCP also contends the proposed amendments are simply not important.

First, the Court notes that neither RevoLaze nor JCP addressed RevoLaze's third request— the additional evidence related to products identified in RevoLaze's complaint. Thus, the Court finds that as to this particular request the importance factor weighs against granting leave.

Second, as to the § 295 contention, the Court finds the case relied on by RevoLaze inapposite. In *Polaris*, this Court found the proposed amendment important because the defendant launched *new* allegedly infringing products during the course of discovery which the plaintiff

---

[5] RevoLaze notes that precluding amendment would limit RevoLaze to just one one-hundred-twentieth (1/120) of JCP's private-label denim garment sales. (Dkt. No. 143 at 5.)

wished to add to its infringement contentions. *Polaris PowerLED Tech., LLC*, No. 2:17-cv-00715 (Dkt. No. 285 at 3–4, 8). Here, the products sought to be added are not new. However, the Court recognizes that the amendment sought would add many accused products to RevoLaze's infringement contentions, which is what JCP contends would result in prejudice to it. JCP's argument that the amendment is prejudicial contradicts its earlier argument that the amendment is not important. *See Alcatel USA Resources, Inc. v. Microsoft Corporation*, No. 6:06-cv-500, 2008 WL 11348444, at *2 (E.D. Tex. Oct. 3, 2008). As such, the Court finds that this factor weighs in favor of granting leave as to the § 295 contention.

### C. Prejudice and Continuance

RevoLaze argues that the amendments sought will not prejudice JCP because it has known since the beginning of this suit that "RevoLaze's allegations of infringement extended to all its products manufactured in an infringing manner." (Dkt. No. 126 at 12.) RevoLaze further contends that JCP should have been aware that it faced a risk of § 295 being applied if it and its manufacturers failed to provide information about the manufacturing processes. (*Id.* at 13.) Instead of aiding in the discovery process, RevoLaze contends JCP obstructed it. (*Id.*) As such, any prejudice to JCP is of its own making. (*Id.*) Finally, RevoLaze argues that, as to the additional evidence related to the other products named in RevoLaze's complaint, JCP has been aware of them since that complaint, so there is no prejudice to JCP. (*Id.* at 14.) RevoLaze contends that there is no continuance necessary because there is no prejudice to JCP. (*Id.* at 15.)

JCP responds that if RevoLaze is permitted to amend just prior to the close of discovery, the prejudice to JCP would be severe. (Dkt. No. 133 at 11.) JCP contends that if RevoLaze had included its § 295 theory in its infringement contentions, JCP would have sought more depositions and would have sought to compel discovery from third-party suppliers via the courts and Hague-Convention procedures. (*Id.*) JCP states that with discovery closing, it is impossible for JCP to

now gather the evidence needed to prove non-infringement as to the thousands of products RevoLaze seeks to add to its contentions. (*Id.* at 11–12.) Finally, JCP argues that if the Court were to allow RevoLaze to add 4,693 new products, JCP would require a substantial continuance to further disprove that its suppliers used lasers. (*Id.* at 15.)

       As to the § 295 contention, the Court finds that both the prejudice and continuance factor weigh strongly against granting leave. The Court finds *Connectel, LLC v. Cisco Sys., Inc.*, cited by JCP, instructive in this instance: "Specific theories create a specific trajectory for the case. . . . [W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions . . . the case takes a clear path, focusing discovery . . . ." 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005). By waiting until the end of discovery to amend its infringement theories, RevoLaze threatens the clear, focused path that both parties were following prior to the instant Motion. As such, the Court finds that this amendment would be materially prejudicial to JCP. Further, JCP would likely need to conduct additional discovery into each of its manufacturers, which would result in continuing the trial.

       As to the additional evidence concerning the two products included in RevoLaze's complaint, the Court finds that these two final factors weigh in favor of granting leave. These two products were included in RevoLaze's complaint and as such, JCP has been on notice of these and likely conducted discovery in regard to these two products. Furthermore, it was JCP that acknowledged the need for this evidence's inclusion in RevoLaze's contention. Thus, no continuance should be needed in this regard. Finally, JCP is silent as to whether this amendment would result in prejudice to it. Accordingly, for this particular amendment, the Court finds that this factor weighs strongly in favor of granting leave.

## IV. CONCLUSION

For the foregoing reasons and considering the four factors identified above, RevoLaze's Motion for Leave to Amend Infringement Contentions (Dkt. No. 126) is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows: The Motion is **GRANTED** with respect to the unopposed Flynn Amendment and as to the additional evidence specific to the two products named in the complaint. Accordingly, it is **ORDERED** that RevoLaze is permitted to supplement its infringement contentions to include the unopposed Flynn Amendment and the aforementioned additional evidence. However, the Motion is **DENIED** in all other respects.

**So ORDERED and SIGNED this 6th day of May, 2020.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE